ELIZABETH H. GEMMILL,

*vs.*

JACOB RICHARDSON and FRANKLIN Q. FLINN.

*New Castle, Feb. T. 1873.*

A mortgage executed by a husband and wife was foreclosed after the husband's death, the mortgaged premises sold, and a surplus of the proceeds of sale, after satisfying the mortgage, applied by the sheriff to a judgment against the husband ; *Held*, that it was too late, in the absence of fraud or collusion, to assert the widow's claim to equitable dower in the surplus.

In such case, the judgment having been satisfied and discharged by the application of the money, so that the creditor cannot be placed *in statu quo*, the Court will not follow the fund for the purpose of enforcing the widow's equity as against it.

Nor, in the absence of fraud or collusion practiced upon the widow, will either the judgment creditor or the sheriff be held charged *ex delicto* with the widow's equity.

A court of equity will not follow a fund for the purpose of enforcing an equity against it, after other rights have intervened to innocent third persons who cannot be restored to the *status quo*.

Distinction in this respect between a mere equity and an estate, lien or charge at law.

A sheriff, in the application of money raised under an execution at law, is not bound to take cognizance of equitable claims upon it. These can be asserted only by a bill in equity bringing the fund within the jurisdiction of this Court.

THIS WAS A BILL filed by the widow of David W. Gemmill, deceased, to recover what is termed equitable dower out of the surplus proceeds of certain real estate, sold

since his death under two mortgages in which the widow had joined. The gross proceeds of the mortgaged real estate were $16,500. The whole sum applicable to the mortgages was $9968,55, leaving a surplus of $6531,45. The widow's claim was to have one-third of this sum invested for her benefit during her lifetime.

The defense rests upon the ground that before this bill was filed and before any claim had been made by the complainant upon the surplus, it was applied by the sheriff who had made the sale, the defendant Richardson, in discharge of sundry judgments against Gemmill, the mortgagor, exceeding the surplus in amount. Among these judgments the last in order was a judgment of the defendant Flinn, for $2000,00. The surplus proceeds of sale were sufficient after allowing the widow's equitable dower in one-third to pay the judgments prior to Flinn's, except a small balance upon a judgment held by the Farmers' Bank ; so that with the exception of the small balance due the bank, the conflict of interest respecting this fund was between the complainant as widow of the mortgagor and the defendant Flinn as a judgment creditor.

The bill did not allege that the sheriff, before applying the whole surplus to the judgments, received any actual, formal notice of the widow's claim ; but it alleged that at and after the time of the sale the sheriff knew the fact that the complainant was the mortgagor's widow, and hence sought to affect him with knowledge of her rights in the proceeds. The prayer was that the defendants, both or one of them, might be decreed to pay into Court the amount applied to Flinn's judgment, viz : $2067,94, with interest from the day of the confirmation of the sale, the said sum to be invested under the direction of the Court, so as to secure the interest to the widow during her lifetime.

The answers of the defendants denied that there was any notice or demand on the part of the widow, and insisted that not having sought her equity in this Court before the fund was applied, she must be taken to have waived it; that the proceeds were applied by the sheriff in due course of law and were rightfully received by the defendant, Flinn, in the absence of any proceedings to assert the widow's equity; and that the fund cannot now be followed.

*G. B. & J. H. Rodney,* for the complainant.

The case of *Cornog vs. Cornog,* 3 *Del. Ch.* 407, established the general right of dower in an equity of redemption and in the surplus proceeds of sale under a mortgage. The only question here is whether the right can be enforced against these parties and under the circumstances of this case.

The surplus is to be considered as land and the widow's interest in it not a naked equity but an estate, of the same effect as her dower in land.     It cannot be laid off out of money, and hence the necessity of resort to a court of equity, because it is competent to deal with it as land.

The duty of the Sheriff is to apply the proceeds of an execution in a legal manner,—to the parties entitled. Having knowledge as he had, that Gemmill had left a widow, he was bound to take cognizance of her right and apply the money accordingly.   He was not forced to pay Flinn.   Why did not he wait?   He had a resort to equity for his protection, and any information or knowledge putting him on his guard that Mrs. Gemmill had a right in the fund, made it his duty to resort to equity by a bill of interpleader.

We do no claim that he was to settle the matter him-
76—DEL. CH. IV.

self. He was bound to act in good faith and to act upon reasonable ground of inquiry. It is not a question of formal, technical notice. The statutory requirement that the surplus be paid to the debtor is itself notice to him of the widow's right upon *a levari facias* against sale under the debtor *and the widow*.

She should have had notice, or ground of knowledge equivalent, and then suffer unreasonable delay, to forfeit her right. The sheriff was bound to inform her; she being one of the defendants, to whom the law directs payment of the surplus.

He has no right voluntarily to shut his eyes to a right in a fund held by him, the existence of which he has reason to believe and which he could easily protect by the usual course open to officers and stake-holders. To do so, and speedily and needlessly sacrifice it, is against equity and should raise an equity against him.

If she had, as is adjudged in the Cornog case, a right in the fund, then what has she done to lose it? Could she lose it by a sort of forfeiture without some act or neglect equivalent to waiver. She had nothing to do to vest her right; there must have been something to divest it. Nothing has occurred to estop the widow. The ordinary strict rule of estoppel does not apply to a widow seeking dower at law. Her claim to equitable dower stands on the same footing. 1 *Washb. on R. P.* 204.

So as to a waiver;—it does not depend upon any arbitrary rule but is a question of reasonable opportunity and diligence.

The right is certain and definite, it cannot be spirited away by collusive payment in the absence of a formal demand.

No act of waiver is relied on, but only omission. Then, if knowing her right, she had slept an unreasonable time or had allowed the Sheriff to be sued, that would have been a waiver ; but that would require evidence of knowledge and unreasonable delay. There must be some act of waiver or neglect equivalent involving fraud in claiming her right because the right is in the nature of an estate to be diverted.

But there can at least be no doubt as to her remedy against Flinn who received and holds the money which is subject to her right. As to the satisfaction of his judgment, he does not lose the money but only holds it subject to her equity. He would only be in the same position as if the money had been brought into Court and secured to her life, and the principal to his debt at her death. His *status* would be the same and he not injured.

*Gray*, for the defendant, Richardson.

We admit the general right to equitable dower in surplus proceeds of a mortgage, but rest upon the effect of payment by the sheriff without notice, or even knowledge, of any claim by the widow or of her equitable right.

The right of the widow is not fixed until ascertained by a court of equity. It rests in the conscience of the court. Until her *status* is adjudged, and her right judicially ascertained, the sheriff cannot take cognizance of it, but must dispose of the fund in hand according to the rights of creditors appearing of record. It was in this position the sheriff made distribution, and he can be under no liability.

What could the sheriff do but apply the fund to the liens certified to him ? *Rev. Code*, 404, *Sec.* 60. How could he have defended in a suit ? In a court of law,

where he would have been called to account, the equit-able claim could not have been recognized. Then was he bound to go into equity, if she herself omitted or neglected to do so was it not necessary for her to protect her own right when notice of her claim would not have affected Richardson.

To affect either of the defendants there must be some equity of the widow, as against them, binding their con sciences. What equity has she, having suffered the fund to be distributed without seeking her remedy? Her equity was against *the fund* which had no longer existence after distribution. It is now sought to be enforced against *the defendants personally*. For this there must be some-thing to affect their consciences personally, as notice, &c.

Our position is that the widow's equity attaches to the fund as such while it remains undistributed, but does not reach parties whom she has permitted to receive it without interposing to claim her right, unless, by *some act of theirs*, an equity arises. Her claim is not like dower at law, *a fixed right* on the estate which must be released ; but a mere equity, conceded in consideration of her loss of dower, and is subject to all equitable considerations as between her and those against whom she claims.

Consider the mode of relief; *i. e.* by bringing the fund into this Court to secure the widow for life. Is the sheriff subject to any such duty, and uncertain responsibility, or is he bound to come into this Court to establish for the widow, rights which she does not seek herself ? If so, the sheriff must ascertain the exact bounds of her right and what creditors are to contribute it. If this were so the bank should have been a party.

Mere general knowledge upon report of Gemmill's marriage was not sufficient to affect the sheriff with notice.

The doctrine of estoppel in Washburne applies to dower at law, which is an estate and not a mere equity. Stronger circumstances may be required to pass, by estoppel, the estate in dower, or bar that right, than to rebut a mere equity.

*S. M. Harrington*, for the defendant, Flinn.

We admit the law as ruled in the Cornog case, and that the widow's remedy is required to be taken, against *the fund while in sheriff's hands,* unapplied. Such was the case made by Mrs. Cornog. Further her bill alleged frequent applications to the sheriff while the fund was in his hands, and, therefore, within the control of this Court, (1) to restrain its distribution by the sheriff, (2) to direct its proper investment, holding it subject to the continued order of the Court until the widow's death.

I. The sheriff in applying the money was not bound to recognize the widow's equity *even had he notice of such claim.*

This is shown by his recognizance and the general nature of his duties.

His recognizance requires him to apply money to legal liens. To enable him to do so certificates are required to be furnished him. The law expressly directs the application of a surplus to other liens shewn by the certificate. His refusal subjects him to a suit and penalty of twenty per cent.

The law does not require or permit the sheriff to go outside of the records, to look after mere equitable claims, depending, it might be, upon many complicated facts:—as that she was the widow,—whether there were children, —whether a release or forfeiture of dower;—or an equitable mortgage by deposit of title papers:—as to all which

no mode of evidence is provided for the sheriff. Moreover, even if all these difficulties were overcome, he would be called on not to pay but to invest,—but for whose use, upon what security, on what conditions,—by what form of instrument,—as to all which he has no authority and his action would be invalid and not protect him in a suit on this recognizance. The sheriff by such action will constitute himself a court of equity,

The policy of the statute is to afford the sheriff a plain and unmistakable rule of application, *i. e.*, by the certified list of liens:—and this both for his protection and as well for the security of creditors,

The case of equitable mortages by deposit of title deeds as against such lien-holders shews that the sheriff is not bound to recognize equities. Clearly the sheriff is not bound to know or apply money to such lien.

If a sheriff even with notice of claim to an equitable lien is not bound, *a fortiori* is this case when no claim was made.

The sheriff can do nothing as to equities but under the order of this Court—(1.) to arrest it as a fund; (2.) to bring it into control of the Court; (3.) to invest it so as to protect all interests in it ; (4.) to give the sheriff a legal discharge.

It was the sheriff's duty on confirmation of sale immediately to pay over to the lien creditors, under a severe penalty for delay. *Rev. Code*, 89.

His only relief under disputed claims or absence of parties is to pay the money into the Superior Court. Now, how could he pay into *a Court of law*, money under an equitable claim. The Superior Court would refuse to receive it.

A test of the sheriff's duty is the question, could he be sued by Mrs. Gemmill on his recogniznce which both bounds and enforces all his liability.

The legal policy of protecting sheriff is illustrated by difference of sale under a judgment and under a mortgage,—the former being subject to dower and throwing the risk on the purchaser :—under the latter the sheriff being protected by making the sale clear of dower in the land.

So the effect of the rule that a mortgage cannot be partially redeemed, that a sale discharges land of the whole equity and sends the widow to a court of equity, all bear to the same conclusion, which is wholly to relieve the sheriff from all responsibility as to dower.

So also the provision for paying overplus to representatives of debtor. *Rev. Code*, 404, *Sec.* 60.

Suppose, under this provision, the sheriff had paid over the surplus to the executors and they had applied it to the judgments ; could the sheriff then, following the letter of the law, have been liable ? Not at all. *Com. use of Moore vs. Rahm*, 2 *S. & R.* 376.

The same principle must apply to the case of lien creditors, who stand in place of the executor or heir of the debtor.

The utmost effect of notice, could be only that he might hold the money a reasonable time for her to go into equity. She had more than time after confirmation to do this, a month—and four months after sale.

II. But the sheriff had no notice of the claim. The bill is grounded upon this allegation of notice. Both defendants deny it. The admission in the answer as to com-

plainant's being the widow is only as to the fact before distribution. It has only the effect of any other proof of the fact.

Flinn expressly denies notice—and the denial of notice is responsive and conclusive in the absence of proof.

There is no equity, at least, against him. If any misapplication it was by sheriff and he is liable. But Flinn was in no default in receiving what sheriff applied in due course of law. The same principle which would hold Flinn would apply to executors, administrators, heirs, and work confusion.

Besides, Flinn's judgment is discharged and cannot be restored and that without any laches, fraud or default on his part.

The result is that the fund is gone,—extinguished,—irrecoverable,—nothing left to which the equity can attach.


THE CHANCELLOR :—

This seems to be a case of first impression. No direct authorities are found upon the question raised. It must be decided in accordance with the general principles which have controlled this Court in administering that peculiar class of interests termed equities, as distinguished from legal estates or rights. For, although the contrary was earnestly argued, there can be no doubt that the widow's interest in the surplus proceeds of sale was but an equity.

The questions involved are (1st,) whether this Court has the power to recall the surplus proceeds of sale which have been paid to the judgment creditor, Flinn, so as to enforce the widow's equity *against the fund* ; or, (2nd)

supposing the fund to have passed beyond the reach of the Court, can the defendants, Flinn and Richardson, or either of them, be held to respond personally to the widow, it having been by their action that the fund was discharged of her equity.

First, then as to the fund : It has been applied by the sheriff to the judgment of the defendant Flinn. Can the Court recall it ?

I am far from considering that a fund which is subject to an equity is placed beyond the reach of this Court merely because it has passed out of the hands in which the equity originally attached to it. That is a power too important to be surrendered without necessity. But it is a power subject to this limitation, viz : That the Court can in such case recall the fund only when in so doing it can restore the *status quo*, as it stood before the fund was disposed of, so as not to affect or prejudice rights or equities which have intervened to innocent third persons ; to illustrate, if, in the case of this fund, there had been no other liens beside the mortgage, and the money had been paid over by the sheriff to Mr. Gemmill's executors or administrators or to his heirs at law, the Court might recall it from their hands for the purpose of enforcing the widow's equity ; because they would have lost no advantage by receiving it, and by restoring it they would be placed in no worse condition than they held before it was paid to them ; besides the additional consideration that they represent the husband against whose estate the dower is claimed. No equity would be violated by obliging them to render back the fund. But very different is the condition of the fund after it has been applied, as in this case, to judgment against the debtor. By such application the judgment has been satisfied and discharged—irrevocably so—for a judgment once discharged is gone forever. This Court therefore cannot, when recalling the fund, reinstate

77—DEL. CH. IV.

the creditor to his rights and remedies under the judgment ;—it cannot restore the *status quo.*

That the application of the fund to Flinn's judgment operated as a satisfaction and discharge of it will be made obvious by considering that this is a question to be adjudged in the Superior Court, the Court in which the judgment was rendered, and under the process of which the money was raised and applied. The question could arise only in the event of an attempt to enforce the judgment by execution and of an application to the Court to stay proceedings upon the ground of satisfaction. That Court, being a Court of law and taking no cognizance of equities, would treat the money raised under its process as a purely legal fund applicable only to liens at law, and would necessarily hold any judgment paid in its due order out of the proceeds of sale to be discharged. Now, what would be a discharge of the judgment in the Court where it was rendered must be so treated here. For that Court having the exclusive power to enforce the judgment by its process, its decision must be absolutely conclusive. This Court has no possible control of such a question. It may restrain a judgment creditor from making an inequitable use of the process of the other Court, but it has no jurisdiction to give a creditor the use of such process.

It must then be obvious that, as against the fund itself, from the necessity of the case, the widow's equity can be protected only by arresting it in the hands of the sheriff before its application to the legal liens, and thus bringing it within the jurisdiction of this Court. After it has been applied to judgments in the due course of law, all questions touching the fund and what rights appertain to it and the validity and legal operation of the payment made to the creditor belong to another Court in which equities are unknown and where the fund is held subject only to legal claims.

In the next place :—As the fund is beyond reach, can Mr. Flinn the judgment creditor who received it be charged personally with the equity which attached to it prior to its being applied to his judgment ? I think not. The effect would be to leave a creditor who has been in no default, stripped both of his judgment and of the money received in satisfaction of it ; such a decree would be in gross conflict with one of the principles of this Court, viz : that it will not enforce an equity by violating equity or working injustice.

The creditor by receiving the money has been in no default. He has only accepted what by law was required to be applied to his judgment. In the condition in which the fund stood, no equity having been asserted against it, it was applicable only to legal claims, and to this judgment in its order. The creditor was not only entitled to it, but was obliged to receive it ; for it was the law through its officer that applied the money, and the creditor could refuse to receive it only by relinquishing his judgment. Further than this, in the present case Mr. Flinn not only exercised a legal right, but upon the evidence, I am satisfied that he has acted in good faith, without any collusion or effort to prevent or forestall the assertion of the widow's claim ; in fact, that he was ignorant of it. Further, it must be added that it has been solely in consequence of Mrs. Gemmill's own neglect to take her remedy seasonably that the fund took its legal course of application.

There is clearly no ground for charging Mr. Flinn, *ex delicto,* as for fraud or breach of duty in the receipt of this fund. Therefore, he cannot equitably be decreed to refund the money applied to his judgment, unless he can be re-instated in the judgment. But this, we have already seen, is impossible.

The principle just referred to, that a court of equity will not enforce an equity contrary to equity, springs from

the very nature of equitable interests and is' of general application. These are interests which this Court, upon considerations of good conscience, sets up against the rights which at law attach to the subject-matter. They must, therefore, be asserted consistently with good conscience and not otherwise. Hence it is that what are termed equities may be lost by laches on the part of the claimant *affecting prejudicially* the party against whose legal rights they are set up, or they may be defeated by superior equities attaching to the subject-matter. In this respect they differ from estates, liens or charges at law, affecting land or a personal fund ; for these can be divested or discharged only by legal modes, such as the conveyance of an estate, or the release or satisfaction of a lien or charge. It cannot be necessary to argue that the claim of this widow is a bare equity known only in this Court, and with which the fund is not affected until brought into this Court and subjected to its decree. Her claim is in no sense an estate, lien or charge, such as needs to be divested by a release.

It remains now to consider the case as against the sheriff, Richardson. He is sought to be charged on the ground, taken in the argument, that having notice, or at least knowledge of the widow's rights, he applied the money to the judgment instead of bringing it into this court by a bill of interpleader, which was assumed to be his duty in the premises ; and so it is argued that he may be affected *ex delicto* with the widow's equity. I waive the question of notice in this connection, as being wholly immaterial to the sheriff's duty or responsibility touching this fund. For, whether with or without notice, it is not a sheriff's duty in applying the proceeds of an execution at law to take cognizance of equities affecting the fund. The proceeds, while in his hands, are a purely legal fund, being raised under the process of a court of law, and it is applied by the sheriff as an officer of that court, acting upon the same principles which would govern the court

itself in administering the funds.    That the sheriff stands
in this relation to the court from which the process issued
and is bound to apply the money, as the court itself would
do, is evident from the fact that he may under proper cir-
cumstances and on the application of the party interested,
be ruled to bring the money into that court for distribu-
tion.    Further, the statute which authorizes the sheriff, in
the case of conflicting claims upon the proceeds of an exe-
cution at law, to take the money into the Superior Court,
conclusively demonstrates that his responsibility is only
to legal claimants such as the court which issued the pro-
cess recognizes, because, clearly the statute must have
contemplated giving him this relief against all claims to
which he could be subject ; and equitable claims cannot
be brought under the cognizance of the Superior Court.
But beyond all this, is the more practical, and, perhaps,
more important consideration that only by confining the
responsibility of the sheriff in applying money raised un-
der execution to legal liens of record, can the office be
administered with safety either to himself or to the pub-
lic.    In this view of the sheriff's duties and responsibilities
touching the fund while in his hands, he could not be
allowed by a bill of interpleader to bring the money into
a court of equity.    For the object of such a bill is the pro-
tection of the party filing it against conflicting claimants
upon the fund or property in his hands—such claimants
as he is bound to recognize, who can hold him responsi-
ble and who may harrass him with conflicting suits for
the same subject-matter.  2 *Sto. Eq. Jur. Sec.* 806.    But
a sheriff, being amenable only to legal and not to equit-
able claimants had no need in this case for his own pro-
tection to file a bill of interpleader ;  and certainly he
would not have been permitted to file such a bill and
to bring the fund into this court for the protection of
the widow's interest.    That would violate a settled prin-
ciple of the law of interpleader which forbids one hold-
ing a fund professedly as a disinterested party from using

the process of the court to protect the interest of one claimant at the expense of another;—whence comes the rule that a complainant in a bill of interpleader shall make affidavit that the bill is not filed in collusion with either of the claimants.

Under the circumstances, it does not appear that the Sheriff in applying the surplus proceeds of sale to the judgments in their order committed any breach of official duty. Neither is there the slightest evidence of fraud, collusion or undue haste, evincing an effort to defeat the widow's equity. The money was applied in the due and proper course of such business, not less than a month after the rights of the judgment creditors had become fixed at law by the confirmation of the sale and adjournment of the Superior Court. There is therefore nothing to affect the sheriff with the equity displaced by his application of the fund to the judgments.

The result of the whole case is that the widow has lost her equity by omitting seasonably to assert it. I treat the case not as one of estoppel or of waiver. That it was technically neither of these was well shown in the argument. But it is a clear case of a loss of remedy through the failure to prosecute it while the subject-matter was within the control of the Court; and nothing remains but for the complainant to bear the consequence of her neglect. This is indeed, a hardship, but it is one inseparable from the condition of such a fund. The proceeds of the land being subject to the liens at law, as they stand upon the confirmation of the sale, unless meanwhile the equity shall be enforced against it, there is reason that the widow should take her remedy promptly, if at all, so that the interests of others in the fund be not prejudiced. Nor was she without opportunity to protect her rights. For she had notice from the date of the service of the *scire facias*, and ample time to file a bill in equity

after the confirmation of the sale—not less than a month: Her ignorance of the law and want of legal counsel, suggested in the argument, are not, in the absence of fraud, grounds for equitable relief.

The bill must be dismissed.