344

THE FIRST NATIONAL BANK OF FRANKFORD, a corporation of the United States of America,

*vs.*

MAE ANDREWS, Individually, and as Administratrix of the ESTATE OF HARRY ANDREWS, DECEASED.

*Sussex, October 28, 1942.*

*James M. Tunnell, Jr.*, of the firm of Tunnell & Tunnell, for complainant.

*Howard W. Bramhall*, for defendant.

THE CHANCELLOR: *Section* 4792 of the *Revised Code of* 1935 provides:

"Lands, tenements and hereditaments and all right of dower and curtesy therein when no sufficient personal estate can be found may be seized and sold upon judgment and execution obtained."

This provision relates to sales on execution process issued by the Superior Court.

On November 30th, 1940, two judgments, by confession, were entered in the Superior Court for Sussex County by "The First National Bank of Frankford" against Harry Andrews and Mae Andrews, his wife. One of these judgments was for the real debt of $600.00; the other was for $349.39. The latter was subject to a credit of $75.00 on November 29th, 1940. The interest on both judgments was paid to that date. The judgment for the original debt of $349.39 was entered on a note, payable to the order of "I. W. Long & Son," which was subsequently "assigned" to the complainant. It appears that it was entered in the name of "I. W. Long & Son, for the use of The First National Bank of Frankford."

Harry Andrews died on or about May 22nd, 1941, and letters of administration on his estate were subsequently granted to the said Mae Andrews, his widow. On or about November 15th, 1941, pursuant to her petition as administratrix, the Orphans' Court for Sussex County entered an order directing that the lands of the said Harry Andrews, deceased, be sold for the payment of his debts. The bill does not allege that a sale was made pursuant to that order, but the defendant admits that it was made on December 6th, 1941, or a few days after the filing of the bill. The sale price does not appear. The bill alleged, however:

1. That, under the practice long established in the Orphans' Court, the complainant will not be permitted to assert its rights as a judgment creditor "to the prejudice of the common law and statutory rights of Mae Andrews, widow of the deceased."

2. That because of the extreme youth of the said Mae Andrews, if the usual rules governing the procedure in the Orphans' Court are applied, as widow of Harry Andrews,

deceased, she will be entitled to retain "more than 74% of the net proceeds of such sale."

The inference is that the balance will not pay the complainant's judgment.

A jurisdictional question is involved—whether adequate relief can be given by the Orphans' Court.

*Section* 10 of *Article IV* of the *Constitution of* 1897 provides that the Court of Chancery "shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery."

*Section* 11 of the same *Article* provides that the Orphans' Court "shall have all the jurisdiction and powers vested by the laws of this State in the Orphans' Court."

*Section* 4367 of the *Revised Code of* 1935 provides that the Court of Chancery "shall have power to hear and decree all matters and causes in equity * * *."

This statutory provision has been the law of this State from an early date. Under it, it has been uniformly held that the Court of Chancery has all the equitable jurisdiction of the State; all of the jurisdiction that was possessed by the High Court of Chancery in England at the time of the separation of the colonies. See *Fox v. Wharton*, 5 *Del. Ch.* 200.

The same section of the statute contains a proviso that the Chancellor "shall not have power to determine any matter, wherein sufficient remedy may be had by common law, or statute, before any other Court or jurisdiction, of this State; * * *."

That provision is merely declaratory of the old English rule. *Bovay, et al., v. Byllesby & Co., ante p*: 69, 22 *A.* 2d 138.

When a Register of Wills is interested in matters ordinarily coming before his court, the Constitution gives

the Orphans' Court jurisdiction. *Section 33, Article IV, Constitution of* 1897. In all other cases, the jurisdiction of that court is confined to the special jurisdiction conferred on it by the various provisions of the statutes; and there is no provision giving it any equitable jurisdiction. But there is a broad distinction between the exercise of equitable jurisdiction and the limited exercise of incidental equitable powers, in order to do full and complete justice in a case. Bearing in mind that distinction, it has been held in this State, and elswhere, that the Orphans' Court, in exercising the jurisdiction conferred upon it, has such incidental equitable powers as may be reasonably necessary and proper to fully determine the matters lawfully before it. *Farrow v. Farrow,* 1 *Del. Ch.* 457; *Green v. Saulsbury,* 6 *Del. Ch.* 371, 33 *A.* 623; *Petition of Gray.* (*In re Hitchens' Estate*), 12 *Del. Ch.* 417, 109 *A.* 574; see also *In re Nimlets' Estate,* 299 *Pa.* 359, 149 *A.* 658; *Easton v. Goodwin, et al.,* 119 *N. J. Eq.* 114, 181 *A.* 275.

In *Green v. Saulsbury, supra,* the Chancellor, sitting as President Judge of the Orphans' Court, said that that court possessed equitable powers "in reference to all matters coming under the cognizance of said courts to which the application of equitable principles and powers are necessary and proper for their determination, unless there be any case where the exercise of such jurisdiction and such powers have been prohibited." [6 *Del. Ch.* 371, 33 *A.* 627.] That is apparently what Chancellor Ridgely meant in *Farrow v. Farrow, supra,* when he said: "This Court, [Orphans' Court] then, is a court of equity, as to all matters within its jurisdiction; * * *."

*Green v. Saulsbury, supra,* involved the proper application of proceeds of land sold by order of the Orphans' Court for the payment of debts. The widow of the deceased had elected to take a provision for her benefit under her husband's will. Her action was taken in absolute ignorance that the financial condition of his estate made it impossible

to carry out the intended provision in lieu of dower. Applying equitable principles, the widow's election was disregarded and her dower rights recognized. Somewhat similar principles were applied on a petition to assign dower in *Farrow v. Farrow, supra,* which involved an ante-nuptial contract. *In re Ellis' Estate, (Orphans' Court)* 24 *Del. Ch.* 393, 6 *A.* 2d 602, involved very different facts, and is not inconsistent with these cases. The opinion of the Chief Justice in *McCaulley's Ex'r. v. McCaulley,* 7 *Houst.* 102, 30 *A.* 735, may be inconsistent with them, but whether Judge Houston agreed with his conclusion on jurisdictional grounds is perhaps questionable. At any rate, I prefer to follow the rule laid down in *Farrow v. Farrow* and *Green v. Saulsbury.*

When the personal estate of a deceased person is insufficient to pay his debts, the Orphans' Court, on petition of his personal representative, may order his lands sold for that purpose. § 3877, *Revised Code* 1935. See *Cornog v. Cornog,* 3 *Del. Ch.* 407.

His widow ordinarily has a right of dower, or some greater statutory right of that nature therein, and they may be sold subject thereto; but under the statutory procedure and rules, governing the Orphans' Court, she may waive the assignment of her rights by metes and bounds, and elect to take in lieu thereof an equivalent share of the proceeds of the sale. § 3880, *Revised Code* 1935. Perhaps it may be assumed from the arguments made that the widow of Harry Andrews adopted the latter course, though that does not appear from the allegations of the bill. Apparently based on that assumption, the complainant claims:

(1) That, whatever the nature of a married woman's inchoate interest in her husband's lands may be during his lifetime, the statutory right of the Superior Court to seize and sell them "and all right of dower * * * therein" upon "judgment and execution obtained" when "no sufficient personal estate can be found" (§ 4792, *Revised Code* 1935,

*supra*) can only be on the theory that the plaintiff in a judgment, to which she is a party defendant, has a lien on her rights.

(2) That if, after her husband's death, his lands are sold by order of the Orphans' Court to pay his debts, and his widow waives the assignment of her interest therein by metes and bounds, and elects to take a share of the proceeds of the sale, the judgment lien should follow her share of the fund,[1] and it should be applied accordingly.

But the fund which the complainant seeks to reach is in the control of the Orphans' Court, and can only be distributed pursuant to its order, and in view of its equitable powers these contentions can be considered by that court.

An order, sustaining the demurrer and dismissing the bill should, therefore, be entered.

[1] See 4 *Pomeroy's Eq. Jur.* § 1167; *Cornog v. Cornog*, 3 *Del. Ch.* 407; *Gemmill v. Richardson*, 4 *Del. Ch.* 599.