The two following cases, found among the late Chancellor Ridgely's notes, are deemed of sufficient importance to be published in an appendix to the Chancery Reports. Suggestions in favor of their publication have come,—as to the first case from the bar, and as to the other from some of the Judges. It will be, doubtless, acceptable to the profession to have such memorials as yet remain of the deceased Chancellors preserved; for which purpose they also are added to the appendix.

ELIZABETH FARROW,

*vs.*

NATHAN FARROW, JAMES FARROW, SARAH FARROW, ELIZABETH FARROW AND FRANCIS A. FARROW.

*Orphans' Court, Kent County, Feb. T.* 1822.

Dower may be assigned by the Orphans' Court in all cases, except where, under special circumstances, the aid of a court of chancery is necessary.

The Orphans' Court is a court of equity, as to all matters within its jurisdiction; and it may take cognizance of any bar to dower, equitable as well as legal.

An *ante*-nuptial contract for a collateral satisfaction in lieu of dower, fairly made, is a good bar in equity, and may be enforced against a claim of dower in the Orphans' Court. But a concealment by the husband of any fact which, at the time of entering into the contract, ought to have been communicated to the wife, is a fraud, and avoids the contract.

*Petition for Dower.*—Joseph Farrow, by his will, dated Sept. 20, 1821, devised all his real estate to his children, the respondents

58

above named. He devised no portion of his estate, real or personal, to his widow. The personal estate proved to be greatly insufficient to pay the testator's debts. This petition was filed by the widow for the assignment of her dower out of the real estate of Joseph Farrow, dec'd. A summons in dower to the respondents, as heirs at law of Joseph Farrow, dec'd, was awarded and served. The respondents appeared, and pleaded in defence, that "before the "marriage had and solemnized between the said Joseph Farrow, "dec'd, and the petitioner, to wit, on the 8th of September, 1818, "by a certain instrument of writing, sealed with the seals of the said "Joseph Farrow, dec'd, and the petitioner, it was agreed by and "between the parties respectively, that the petitioner, if she should "be the longest liver, should, on the death of the said Joseph "Farrow, have and receive one-third part of the personal estate of "the said Joseph, in lieu and in full satisfaction of her third or "portion of the said Joseph's real estate."

The article of agreement, upon which the defence rested, was as follows, viz :

"Article of Agreement, made and concluded on this 8th Sep-"tember, 1818, by and between Joseph Farrow, of Little Creek "Hundred, in the County of Kent, and State of Delaware, of the "one part, and Elizabeth Birkelow, of the same Hundred, County "and State aforesaid, of the other, witnesseth,—That, whereas, "a marriage is shortly intended to be had and solemnized between "the said Joseph Farrow and the said Elizabeth Birkelow, it is "expressly agreed and understood by the said Joseph Farrow and "the said Elizabeth Birkelow, that if the said intended marriage "should take place, then and in such case, and provided also that "the said Elizabeth Birkelow, should be the longest liver, that she "shall, after the death of the said Joseph Farrow, have and receive "one-third of the said Joseph Farrow's personal estate, and in lieu "and full satisfaction of her third or portion of the said Joseph "Farrow's real or personal estate.

"In witness whereof, &c."

(Signed,)

In the presence of us,       JOSEPH FARROW,    {L.S.}
     PATRICK CONNOLLY,      ELIZABETH BIRKELOW. {L.S.}
     HENRY LOWMAN.

FARROW *v.* FARROW.

At the hearing of the petition the Article of Agreement was admitted ;—also, the marriage of the petitioner. that she was then twenty-one years of age, and the seisin of Joseph Farrow, deceased; also, that there remained no personal estate of the deceased, the whole having been sold under executions since his death. Witnesses were examined on behalf of the respondents, to prove the general notoriety of Joseph Farrow's indebtedness; but it did not appear to have been brought to the knowledge of the petitioner.

*H. M. Ridgely,* for the petitioner.

*Hall* and *J. M. Clayton,* for the respondents

*Ridgely, Chancellor, and ex officio Judge of the Orphans' Court.*—By the marriage article the petitioner agreed to take, in case she should survive her husband, Joseph Farrow, one-third of his personal estate, " in lieu in and full satisfaction of her third or " portion of his real or personal estate." Before and at the time of the marriage, Joseph Farrow was greatly in debt,—far beyond the value of his personal estate. He died about the 12th of December, 1821. On the 1st and 2d of January, 1822, his whole personal estate was sold by the sheriff, under execution process, originally issued the 8th of September, 1818, the day of the marriage ; and no part of it has been or can be applied according to this contract. The wife was twenty-one years old at her marriage.

On the part of the respondents, two grounds were taken. viz ;

1. That the Act of Assembly did not give to this Court jurisdiction in every case of dower ; that in many of them very important questions of law may arise which, if entertained by this Court, may be settled without going into and being heard and finally determined by the High Court of Errors and Appeals. And it was suggested that, on the allegation of fraud made by the petitioner's counsel, the Court should send that question to be tried by a jury.

2. It was contended that the wife, before marriage, might bind herself by such an agreement, however precarious it may be, so as to bar her claim of dower.

FARROW v. FARROW.

*First.* As to the jurisdiction of this Court, there can be no question. The Act respecting devises of lands,.joint estates and dower ( 5 *Del. Laws,* 174,) * has enacted that, " in all cases where a widow may " be entitled to dower, the same may be assigned and laid off to her " by the Orphans' Court of the county where the land lies, upon " her petition to the said Court, by the like proceedings, and in the " same manner, as is by law provided in the case of intestate estates ; " and the costs and charges thereof shall be ordered by the Court " to be paid by the parties respectively concerned, according to " their interests in the said lands whereof dower shall be so assigned " or laid off." There can be nothing clearer than the meaning of the Legislature, as expressed in this Act. Authority is given, *in all cases* where a widow is entitled, to assign her dower. By law, in intestacies, no case can arise in which dower may not be assigned by this Court, unless the aid of a Court of Chancery may be required. Such has been the construction and practice under the acts concerning intestates' estates, and the Legislature intended by the late Act to subject all cases of dower, *where the demand could be sustained at law,* to the same jurisdiction, and to the same course of proceeding, whether the widow's right accrued on an intestacy or in any other manner. The act is remedial, and was intended to facilitate the assignment of dower, to lessen the charges, and equitably to divide the expenses among the parties interested. Yet, as there are no negative words in the Act and none implied, the widow may, according to the nature of the case, resort to any other tribunal which had jurisdiction before the Act was passed. In some cases it may be necessary to apply to chancery for its assistance ; as where she has no title deeds, ( *Cases Temp. Talbot,* 126,) or for the discovery of such facts as may enable her to proceed at law or in this Court ; and on an allegation of an impediment thrown in her way in her proceedings at law, a Court of Chancery has a right to assume a jurisdiction to the extent of giving her relief for her dower, and, if the alleged facts are not positively denied, to give her the full assistance of that Court, she being, in conscience as well as at law, entitled to her dower. *Curtis vs. Curtis,* 2 *Bro. Ch. Rep.* 620, 630. *Pultney vs. Warren,* 6 *Ves. Jr.* 89. But dower is a large demand, and the widow's remedy is *prima facie* at law ; and wherever she had, or still

* See *Dig. Del. Laws,* (of 1829), 167.

FARROW *v.* FARROW.

has, a remedy at law, she may apply to this Court by petition and recover her dower.

It has, however, been suggested that, on the allegation by the petitioner of fraud in the marriage contract, this case should be sent to one of the courts of law, in order that the question may be tried by a jury. For what purpose should it be sent to a jury? That another judge may sum up the testimony, and tell the jury what are the conclusions of law, upon the facts proved? Or, is it because a jury is more competent to try the credit of a witness? This Court, it is presumed, can as competently make the proper conclusions upon the facts as the judge of another court; and, as the advantage of a *viva voce* examination can be had here, the credit of witnesses may be as completely and satisfactorily tried here as by a jury. Suppose it were sent to a jury; their finding would not conclude this Court, and more especially the Court having appellate jurisdiction. They must hear and decide for themselves. The Act of Assembly warrants no such proceeding. The intestate acts countenance no such course; and no instance ever has occured of an issue being made up and sent to a jury by this Court. The petitioner has a right to insist on a decision of this Court; and it is the more important, as the petitioner's interest cannot extend beyond her life, that no unnecessary delay should be interposed. With her life her claim ceases; and she ought not to be delayed by a new and extraordinary mode of proceeding; particularly as the Act of Assembly limits the Court to the like proceedings as in the cases of intestacy.

The principal difficulty has arisen on the plea of the respondents. By that an agreement made before marriage, for a collateral satisfaction, is set up to bar the petitioner. At common law, a jointure was no bar of dower; because no collateral satisfaction could bar a right or title of inheritance or freehold. *Vernon's case,* 4 *Co. Rep.* 1 : *Co. Lit.* 363: 2 *Bac. Abr.* 140, *Dower. F.* But now. by the Statute 27 H, 8. c 10. a jointure, made according to the Statute, is a bar. Though a collateral satisfaction is not pleadable at law, yet it may be a good bar in equity. *Lawrence vs. Lawrence,* 2 *Vern.* 365 : *Co. Lit.* 36, *c, note* (1) : *Eq. Ca. Ab.* 218 *pl.* 2 : *Mundy vs. Mundy,* 2 *Ves. Jr.* 122, 129. And the cases in equity generally arise from some legal bar, or from some peculiar difficulty in prosecuting the claim at law. *Curtis vs. Curtis,* 2 *Bro. Ch. Rep.* 620, 630 :

FARROW *v.* FARROW.

*Pulteney vs. Warren* 6 *Ves. Jr.* 89 : *Mitford's Pleadings,* 110, 111 : *1 Madd. Ch. Pr.* 242.

No objection has been made to the plea upon this ground; and this being the first case of the kind, the question is whether the plea of an equitable bar should be received by this Court, supposing it to be available in equity. The question must depend upon the character of this Court and its mode of proceeding. In the Constitution, *Article* 6, *Sec.* 15, 1 *Del. Laws,* 42 : 3 *Del. Laws* 256, the equity jurisdiction of this Court is spoken of as the only jurisdiction of the Court; and in the Act for establishing an Orphans' Court, (1 *Del. Laws,* 87,) an appeal is given to the Governor for the time being, in equity. All the acts to be performed by this Court are of an equitable nature ; and the proceedings are by petition, summons, citation, attachment, imprisonment and sequestration —forms peculiar to a court of equity. The subject matter of the jurisdiction of this Court is such as properly belongs to a court of equity ; and no portion of it is such as belongs to a court of common law, unless it be the partition of the real estate of intestates among their heirs, as tenants in common, and the assignment of dower. The division of the real estate of intestates among their heirs, as tenants in common, is a peculiar case, and is not known at common law, unless among parceners. This authority was given to the Orphans' Court very early, and has been so continued. The assignment of dower in this case is to be made upon the petition of the widow, and in the same manner as is by law provided in the case of intestates' estates ; and the costs are to be paid by the parties according to their interest in the land. This Court, then, is a court of equity, as to all matters within its jurisdiction ; and whatever is a bar, either at law or in equity, may be pleaded. The Act declares, that in all cases where the widow may be entitled to dower, the same may be assigned and laid off by this Court. If she is not entitled at law, or if there is any equitable bar, the Court cannot assign it. The Act seems to mean that the whole inquiry should be made by this Court, to ascertain that she has title before the dower can be assigned

*Second.* This, then, brings us to the question of the widow's right, which depends upon the effect to be given to the marriage contract.

The contract, if fairly made, would certainly be binding on the petitioner. In *Lawrence vs Lawrence,* 2 *Vern.* 365, Lord Somers

decreed that a collateral satisfaction was a good bar in equity. This decree was reversed,—not because of any doubt that dower might be barred in equity, but because the devise to the wife was not expressed to be in satisfaction of dower. See *Mr. Hargrave's note (1) to Co. Lit.* 36, *a.* In *Davila vs. Davila,* 2 *Vern.* 724, marriage articles were held to bar all demands out of the personal estate under the Statute of Distributions. *Caruthers vs. Caruthers,* 4 *Bro. Ch. Rep.* 506, in the note, where *Davila vs. Davila* is cited as law. In *Glover vs. Bates,* 1 *Atk.* 439, a marriage contract, made before marriage with an infant and which she agreed to after the death of her husband and after she arrived to the age of twenty-one years, was held to bar her of her share of the personal estate under the Statute of Distributions,—the husband having died intestate ; such effect being given to a provision that certain terms for years therein mentioned should go to the wife, in full satisfaction and recompense of all right and . claim of dower, or any claim or right by common law, custom of the city, or any other usage, law, or custom notwithstanding. In *Caruthers vs. Caruthers,* 4 *Bro. Ch. Rep* 500, where the question was whether a female infant should be bound by a settlement made on her marriage, it was decided that she should not be bound, because of the uncertainty of the provision made for the wife. But the Master of the Rolls said, that if she had been an adult she might have taken a provision out of the personal estate, or she might have taken a chance in . satisfaction of her dower, *acting with her eyes open* ; but an infant is not bound by a precarious interest. In 1 *Madd. Ch. Pr.* 355, the law is thus summed up, that " any provi- " sion, however inadequate or precarious it may be, which an adult " before marriage agrees to accept, in lieu of dower, will amount to " a good equitable jointure." Like all other contracts, if she is fully apprised of all the circumstances, if she acts with her eyes open, and has an equal knowledge with the husband of all the facts, so that she may judge of them and of the probable result of the contract, she certainly ought to be bound. But if there is any con- cealment, or the suppression of any fact or thing which ought to be communicated, it amounts to fraud, and will vitiate the contract. This doctrine is applicable to all contracts. *Jervois vs. Duke,* 1 *Vernon* 19 : *Broderick vs. Broderick,* 1 *P. Wms.* 239 : *Cann vs. Cann. ib.* 727. And in the very case of dower, if it be fraudu- lently or partially assigned by the sheriff, a court of equity will give

relief. *Hoby vs. Hoby*, 1 *Vern.* 218 : *Sneyd vs. Sneyd*, 1 *Atk.* 442. In *Harvey vs. Ashley*, 3 *Atk.* 607, Lord Hardwicke declared that the husband, who had entered into a marriage contract with his wife, an infant, was guilty of a fraud in secreting judgments and other debts that were charged upon the estate, and that this was a good ground for relief,—not indeed to set aside the whole settlement, but to apply the unsettled estate of the husband to exonerate the estate settled of the incumbrances which had not been disclosed And the case cited by the petitioner's counsel from 2 *Com. Dig.* 469, *Chancery*, (3 *E.* 2) shows, that where a personal estate was vested in trustees upon trust to pay £100, per annum, to a widow in lieu of dower, which proved deficient, though she accepted it for many years, it was supplied out of the real estate. This case shows that where something is expected and considered to be given in lieu of dower, and the consideration fails, the woman shall be otherwise satisfied. And this does not interfere with what was before said, that a woman, an adult, might take any chance or provision, however precarious it may be, acting with her eyes open, in satisfaction of her dower; for the unreasonableness of a contract is no ground to set it aside, if she is of age, perfectly acquainted with her rights, fully aware of what is done, and of all the circumstances which may affect her, and is free from deception.

The contract now under consideration is not such as a Court of Chancery would execute. The husband secreted the debts which both his real and personal estate were bound to satisfy. On the 8th September, 1818, the date of the contract and marriage, two writs of execution were issued at the suit of the President, Directors and Company of the Commercial Bank of Delaware, under which his goods and personal estate were all subsequently sold, without raising a sufficiency to pay his debts.

According to the evidence, there is no proof that Mrs. Farrow had any notice of the debts. Mr. Farrow had a good deal of conversation with other persons about them ; but none of the witnesses bring a knowledge of them home to the wife. Nothing was said about them when the contract was executed nor at the time of the marriage, all which happened the same day. There is a total want of any evidence that she had been informed of his situation. It is evident that she must have expected something as an equivalent for

what she abandoned ; and, therefore, to make the contract valid, justice required that his real situation should have been fully disclosed to her.   He knew well his embarrassments, and that there could be no reasonable expectation that she would ever receive any thing in lieu of her dower.   All this should have been explained to her.

An order for the assignment of dower must be made.