Norris v. Ex'rs of Thomson.

NOVEMBER TERM, 1863.

——

'CAROLINE NORRIS, ADELINE THOMSON, and others, appellants, and THE EXECUTORS OF JOHN R. THOMSON and others, respondents.*

1. To constitute a legacy *specific*, it is necessary that such intention be either expressed by the testator in reference to the thing bequeathed, or otherwise clearly appear from the will.

2. This is not a technical arbitrary rule to be answered only by the use of particular words and expressions, but is an embodiment of the general principles by which the character of legacies should be tested and determined, each will resting for correct construction upon the language employed, and upon established surrounding significant circumstances, if such exist.

3. The language used by the testator in creating and directing the trusts in the will, has a clear reference to the stocks and particular bonds which the testator possessed when he executed the will, and shows that the testator intended that the legacies should be discharged by his trustees handing over to the respective legatees, stock and bonds which they would find in his strong box after his death. *Per* OGDEN, J.

4. If the language of the will does not come up to the rule laid down in the books, the circumstances by which the testator was surrounded when the will was drawn, and the whole scope and texture of the instrument taken in connection with the particular clauses of bequest, clearly indicate an intention to create a specific legacy.

---

* NOTE. This case has been reported, and the opinion of one of the judges is published in 2 *McCarter* 493.

It does not appear that the opinion heretofore published was read in open court, or that the legal principles it announces, were concurred in by any other member of the court. In so far as it may be understood as sanctioning rules of construction, different from those announced in the opinion of the court, it can, it is apprehended, only be regarded as the dissenting opinion of the judge by whom it was delivered. The opinion of the court was read by ODGEN, J. The construction adopted by the learned judge, being derived from the whole scope and texture of the will, it is thought advisable, in order to a clear understanding of the principles upon which his opinion rests, to publish the will at length.—THE REPORTER.

This cause was heard upon appeal from the opinion of the Chancellor (reported *ante, p.* 218) upon the construction of the will of John R. Thomson, deceased.

The will is as follows:

"I direct my debts and funeral and testamentary expenses to be paid, and I appoint John M. Read, Charles Macalester, and Alexander H. Thomson, my executors.

I do hereby give and bequeath, all and singular, the books, pictures, plate, china, wines and liquors, and all other household goods and furniture of every kind, which shall be in and about my house at Princeton, and also in and about my house at Washington, and all my horses and carriages, to my wife, Josephine A. Thomson.

All the rest and residue of my real and personal estate, of whatsoever nature or kind, or wheresoever situate, I give, devise, and bequeath to John M. Read, Charles Macalester, and Alexander H. Thomson, their heirs, executors, and administrators, in trust for the following uses and purposes:

*First.* To give to my sister, Mrs. Caroline Norris, two hundred and fifty shares of the capital stock of the New York and Baltimore Transportation Line; to my sister, Adeline Thomson, two hundred and fifty shares of the capital stock of the said line; to my sister, Amelia Read, wife of the Hon. John M. Read, two hundred and fifty shares of the capital stock of the said line; to my nephew, Alexander Hamilton Thomson, one hundred and twenty-five shares of the capital stock of the said line; and to my niece, Elizabeth Norris, one hundred and twenty-five shares of the capital stock of the said line.

*Secondly.* I give to my friends, John M. Read, William H. Gatzmer, Richard Shippen, Dr. Phineas J. Horwitz, and Joseph P. Norris, the husband of my sister, Caroline Norris, five bonds of one thousand dollars each, of the Delaware and Raritan Canal Company and Camden and Amboy Railroad and Transportation Company, redeemable in 1889, one bond to each of the above named legatees.

I also direct to be paid an annuity of five hundred dollars,

during his natural life, to my brother, Edward R. Thomson, of the United States navy.

And I further direct that, from the income of the residue of my estate, there shall be paid an annual sum of ten thousand dollars, payable semi-annually, to my wife, Josephine A. Thomson, and I authorize and empower my said wife, by her last will and testament, duly executed, to direct, limit or appoint, give or devise, the portion of the estate so appropriated for an income of ten thousand dollars a year for her support, to give or devise the same to and amongst all and every the children of my sisters, Caroline Norris and Amelia Read, and their children, in such proportions, and for such estate or estates, as she may think proper; or if my wife so chooses, she may, by her last will and testament aforesaid, direct, limit, or appoint, give or devise the same to and among my sisters, Caroline, Adeline, and Amelia, and their children and grand-children, and my brother Edward, in such proportions, and for such estate or estates, as she may think proper; and my said trustees, their heirs, executors, and administrators, are hereby required to pay, assign, convey, and transfer the same to the said appointees, according to the directions, limitations, appointments, gifts, and devises in the said last will of my said wife.

And I further direct that, if the income from my estate, after the payment of the bequests herein before made, shall exceed the sum of ten thousand dollars a year, the surplus be invested in good securities, and that my said wife, Josephine, shall be authorized and empowered by her last will and testament, to give and devise the same among such benevolent, religious, or charitable institutions, as she may think proper.

And in default of such directions, limitations, and appointments, and so far as the same shall not extend, then to pay, assign, convey, and transfer the residue to my said three sisters, Caroline, Adeline, and Amelia, and my brother Edward, their heirs, executors, and administrators, as tenants in common, to whom I give and devise the same.

*Fourthly.* I authorize my said trustees and executors to

retain and hold whatever investments I may have at my de-
cease, unless requested, in writing, by my wife to change the
same.

I authorize my said executors and trustees, in either capa-
city, to sell and convey all, or any part of my estate, real
and personal."

The appeal was argued by

*Zabriskie* and *Beasley,* for appellants.

*Bradley,* for respondents.

The opinion of the court was delivered by

OGDEN, J.   The single question presented for adjudication
by this case, and upon which the respondents, who were de-
fendants in the Court of Chancery, as well as the complain-
ants, desired the direction and decree of that court, before
they could safely act in the premises, is whether the com-
plainants, who are legatees named in the last will of John R.
Thomson, deceased, take specific or general legacies.   The
subject matters of the bequests were shares of stock in the
New York and Baltimore Transportation Company, and
joint bonds of the Delaware and Raritan Canal and the
Camden and Amboy Railroad Companies.   The characteris-
tics of specific legacies being undisputed, the arguments of
counsel have been confined to the considerations, whether
the language employed by the testator, under the circum-
stances by which at the time he was surrounded, ascertained
from the relation which he bore to the legatees, the nature
of his property, and his presumed purpose not to die intes-
tate as to any portion of his accumulations then existing or
prospective, viewed and considered in connection with the
general disposition he made of his estate, and with the whole
texture of the will, manifest a clear intention on his part,
that the stock and bonds given by him to the complainants,
should be furnished to the objects of his bounty, out of the
same species of securities which were held by him clear of

2 z*

encumbrance at the date of his will, and retained by him in that condition to the hour of his death, and vested by his will in trustees, on several special expressed trusts.

If such intention sufficiently appears from those considerations taken together, the respective legacies are specific, and the will cannot be carried into effect, without appropriating and handing over to the legatees, the *quantum* of stock and of bonds, directed to be given to them, in the condition in which they were found by the executors and trustees, after the death of the testator.

It is conceded, that if he had directed the trustees to give to his sisters, and nephew and niece, a certain number of shares of *his* stock, and to his friends five of *his* bonds, he thereby would have so individuated, by words, the property which he desired that his legatees should have *in kind*, that a serious question could not have been made about his intention. If, therefore, a like intention is fairly inferable from the language adopted, taken in connection with the several considerations already adverted to, the specific character of the legacies must be determined by such intention.

It appears that the will was made in July, 1862, only a few weeks anterior to the testator's death in September, and during, or shortly before, his last sickness, and probably after he had become unfitted, from disease, to engage in active business. He seems to have retained a perfect knowledge of the amount and nature of his property, and to have been peculiarly conversant with the value, *as investments*, of the stocks and bonds which he was about to bequeath. He manifestly designed to provide munificently for his wife, and to give to his sisters, and a nephew and niece, portions of his property, from which, in his judgment, they severally would reap ample returns. He likewise was mindful of five tried and valued friends, and wished to bequeath to each of them a moderate legacy, as expressive of his estimation of their worth. His confidence in the extent and productiveness of the securities that he held, is manifested by a provision in the will for the investment and ultimate disposition of *surplus interest* and dividends, which he supposed might remain

after applying enough of his stock and bonds to discharge the legacies to the complainants, and after paying $10,000 a year to his wife, and likewise an annuity of $500 to his brother. His injunction to the executors and trustees, to hold the stocks and other investments in trust, for the purposes of the will, and not to *change* any of them, without the written request of his widow, is additional proof that he was fully satisfied with his own judgment in selecting valuable securities for his moneys, and that he wished those securities to be continued intact until his wife, the person who fully knew his mind on that subject, and who is chiefly interested in the future avails of his property, should determine that a change of any of them would be advantageous to the estate.

After directing the payment of his debts and appointing his executors, he commenced disposing of his property, by a specific legacy to his wife, of his books, pictures, plate, and household furniture of every kind, in his mansion-house at Princeton, and in and about his house at Washington, and all his horses and carriages. Then he gave, devised, and bequeathed all the rest and residue of his estate, real and personal, to his executors, their heirs, executors, and administrators, in trust, for certain uses and purposes. By this devise and bequest he transferred to them, as trustees, all the stocks, bonds, and other securities, which he possessed and was entitled to, having in his mind the purpose of directing them to *retain* those securities, for fulfilling the requirements of the trusts he was about to declare.

He then proceeded to specify the purposes to which the estate *thus* put in trust should be applied.

*First.* For his trustees to give to each of his three sisters, two hundred and fifty shares of the capital stock of the New York and Baltimore Transportation line, and to a nephew and niece each, one hundred and twenty-five shares of the capital stock of the said line; the testator, at that time, holding 3,680 shares of that stock unencumbered.

*Secondly.* To give to each of his five friends, whom he named, one bond of $1000, of the joint companies, redeema-

ble in 1889 ; he, the testator, then holding twenty-nine bonds of that description and class, also free and unencumbered ; and likewise a large number of railroad and canal bonds, *then* in hypothecation.

The unencumbered bonds and shares were susceptible of delivery immediately after his death, while those in pledge could not be under the control of the trustees, until the debts, for which they were hypothecated, were paid. The significance of this method, in designating by an ear-mark, the property for his legatees, cannot be blinked or disregarded.

After directing his trustees to pay an annuity of $500 to his brother during his natural life, he directs that from the income of the *residue of his* estate, provision shall be made for his wife, by paying her a fixed sum semi-annually. What is the natural import of that direction ? What could the testator have meant, except that the fund from which her annuity was to arise, was the *residue* of the bulk of his estate put in trust, after taking from it the one thousand shares of New York and Baltimore Transportation stock, and the five '89 bonds of the joint companies ? Did he contemplate that the dividends on that stock, and the interest accruing on those bonds, should constitute a part of the income from which the first semi-annual payment should be made to Mrs. Thomson ? Could that stock and those bonds be properly considered as a portion of the estate, liable to be appropriated for furnishing *any* part of her annual income, upon a fair reading of that clause in the will in connection with the preceding and following clauses ? If such disposition of the stock and bonds entered into the intention of the testator, what meaning is to be given to the words "*income of the residue of my estate*," as the source from which the annuity should flow ?

Again. If the legacies shall be held to be general, the testator died intestate as to the accruing dividends and interest on those securities held by him, which result is always to be avoided, if practicable ; or he intended that the amounts thereof should fall into that undefinable surplus of income, which he directed his executors to invest in good securities, for appropriation by his wife in her last will among benevo-

lent, religious, and charitable institutions. Can this instrument be fairly read, in the light of all the peculiar surrounding circumstances, and such intention be justly imputable to the testator?

The intention of a testator upon the subject of specific legacies, as in every question on the construction of wills, is the principal object to be ascertained, and it is therefore necessary, that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to constitute a legacy specific. 1 *Roper on Leg.* 193.

This is not a technical arbitrary rule, to be answered only by the use of particular words and expressions, but is an embodiment of the general principles, by which the character of legacies should be tested and determined; each will resting, for correct construction, upon the language employed, and established surrounding, significant circumstances, if such exist.

It seems to me that the language used in creating and directing the trusts, was a clear reference to the stocks and particular bonds which Mr. Thomson possessed when he executed his will, and it shows he meant that the legacies should be discharged by his trustees handing over to the respective legatees, stock and bonds which they would find in his strong box after his death.

If, however, the *language* of the will does not of itself come up to the rule laid down in the books, the circumstances by which the testator was surrounded when the will was drawn, and the whole scope and texture of the instrument, taken in connection with the particular clauses of bequest, clearly indicate the intention for which the appellants and complainant contend.

It is the duty of this court to make such a decree as a majority of the members think the Court of Chancery should have made.

In the prayer of the bill, the complainants ask that the legacies of the stock and bonds may be declared to be specific legacies; and that the shares and bonds, together with the

dividends, interest, and income, accrued and accruing thereon, may be transferred and paid to the several legatees thereof.

The decree of the Chancellor adjudging the legacies to be general, and that so much of the bill as prayed for the payment of the income and interest, be dismissed, should be reversed, and this court should decree the legacies to be specific, and that the income and interest should be paid to the legatees, according to the prayer of the bill. The papers should be remitted to the Court of Chancery, with such instructions.