73 A.2d 776 (1950)
In re DUNGAN'S ESTATE.
Superior Court of Delaware, New Castle.
April 4, 1950.
George T. Coulson, Wilmington, for claimant.
William Poole, Wilmington, for the trustee.
Henry Van der Goes, Wilmington, for the executor.
RICHARDS, C. J., Terry, J., sitting.
*778 RICHARDS, Chief Justice.
In the letter which Mr. Dungan wrote to Mrs. Snyder, dated May 15, 1941, he told her what he wanted to leave her in his will, namely, "the securities Aunt Bess left me or their equivalent, they amounted to $3477.50 in the 1941 Tax return", but that had no binding legal effect upon him or his estate. The same may be said of the notation in Mr. Dungan's handwriting on the envelope of the brokerage firm of Spitzer, Rorick and Company, found among his effects after his death, neither Mr. Dungan nor his estate were legally bound by it. If no mention had been made of Mrs. Snyder in his will and codicil, she would not have been in a position to make a claim against his estate, and the question involved in this appeal would not be before the court.
It is contended on behalf of the claimant Snyder, that it does not clearly appear what consideration was given this letter and notation by the Orphans' Court.
Our statute of wills, which is found at paragraph 3705 of the Code of 1935, contains the following requirements; "Every will, whether of personal or real estate, must be in writing and signed by the testator, or by some person subscribing the testator's name in his presence, and by his express direction, and attested and subscribed in his presence by two or more credible witnesses, or it shall be void". By no stretch of the imagination can it be said that the letter and notation above referred to meet the requirements of the statute and can be considered a will.
The only effect which could be given to either the letter or the notation would be to explain the intention of the testator at the time he executed his will on January 17, 1942, and the codicil thereto on July 22, 1943. In this connection it should be kept in mind that the letter to Mrs. Snyder was dated May 15, 1941, prior to the execution of both the will and codicil. It does not appear from the record when the notation on the envelope was made, but the Atlantic Refunding 3½ percent 4½ percent bond were not called until December 1944, which was after the execution of both the will and codicil, and the Borough of Lodi New Jersey 3¾ percent Refunding Bonds were not bought until after that time.
The purpose of all rules for the construction of wills is to determine the intention of the testator.
It is the duty of the Court to ascertain the intentions of the testator when called upon to construe a will. In discharging this duty it should examine the entire will and learn from the language used the real intent and meaning which the testator desired to convey. Bird v. Wilmington Society of Fine Arts, Del. Sup., 43 A.2d 476.
The general rule is that a will speaks from the time of the death of the testator. Where it appears from the will, however, that the testator intended it should speak from some other time, that intention shown by the will prevails. Harris v. Harris, 97 N.J.Eq. 190, 127 A. 108. Bird v. Wilmington Society of Fine Arts, supra.
The letter written by Mr. Dungan to Mrs. Snyder, and the notation in his handwriting on the envelope of the brokerage firm of Spitzer, Rorick & Company, were offered in evidence to show his intention at the time he executed his will and codicil.
The Courts of this state have long been held that parol evidence is not admissible to add to, vary or explain a written instrument. Hearn v. Ross, 4 Har. 46; Sussex Trust Company v. Polite, 12 Del. Ch. 64, 106 A. 54; Winkler v. Woodruff, *779 21 Del.Ch. 147, 182 A. 409; Bird v. Wilmington Society of Fine Arts, supra. In Hearn v. Ross, it was said that if a paper executed with the formalities required by the statute of wills, could be varied by parol, it would repeal the statute.
The author states the rule in 4 Page on Wills, at Section 1625, in the following language:
"Evidence of testator's declarations, whether made before or after the will. including _________ those declarations which are in writing, if not executed in accordance with the Statute of Wills, are inadmissible to show testator's actual intention, apart from, in addition to, in opposition to the legal effect of the language which is used by him in the will itself".
Relying upon these authorities, we feel that the letter and notation are not admissible in evidence to show the intention of the testator apart from, in addition to, or in opposition to the legal effect of the language used by him in the will.
The language used by the testator in item three of his will clearly shows that he intended Mrs. Snyder to have the sum of $3700, regardless of where it came from or independent of any property that he may have owned at the time. This constituted a general legacy payable out of any funds in his estate.
It is contended that the Orphans' Court erred in holding that the gift of 3000 Atlantic City 3½-4½ bonds made by the codicil to the testator's will constituted a specific legacy.
Generally speaking, a legacy is a testamentary gift of personal property, and may be classified as specific, demonstrative or general.
A specific legacy is defined in 57 American Jurisprudence, at page 935, Section 1401, "as a bequest of a particular individualized chattel, fund, or portion of the testator's personal estate, which is set apart from the balance of his property and which is differentiated from all other articles or funds of the same or a similar nature". A general legacy is defined by the same authority on page 936, Section 1402, as, "one which is designated primarily by quantity or amount and which may be satisfied out of the general assets of the tesator, without the necessity of delivering any particular chattel or fund to the legatee".
We are called upon to determine in this case in which of the above defined classes the testator intended the legacy to Mrs. Snyder should be included.
Some of the early decisions were inclined to take the position that the intention of the testator was immaterial in ascertaining the classification of a legacy, and that by using certain words in connection with existing circumstances, it was possible to characterize a legacy as being general or specific. Today, however, the authorities are in general agreement that in order to ascertain the nature of a legacy, it is necessary to ascertain and give effect to the intention of the testator. In determining what this intention is it is not sufficient to consider merely the language by which the legacy is set forth, but the language of the entire will must be considered and the circumstances to which the testator was subjected at the time of its execution.
Sussex Trust Co. v. Polite, supra; Winkler v. Woodruff, supra; Norris v. Executors of Thomson, 16 N.J.Eq. 542; Kenaday v. Sinnot, 179 U.S. 606, 21 S.Ct. 233, 45 L.Ed. 339; Nusly v. Curtis, 36 Colo. 464, 85 P. 846, 7 L.R.A.,N.S., 592, 118 Am.St. Rep. 113, 10 Ann.Cas. 1134; In re Ferreck's Estate, 241 Pa. 340, 88 A. 505; Henderson v. First Nat. Bank, 189 Ga. 175, 5 S.E.2d 636, 128 A.L.R. 816; Maxim v. Maxim, 129 Me. 349, 152 A. 268, 73 A.L.R. 1244; Griffith v. Adams, 106 Conn. 19, 137 A. 20.
The codicil revoked Item 3 of the will above referred to, as constituting a general legacy to Mrs. Snyder for $3700, and in lieu thereof bequeathed to her the three thousand Atlantic City 3½-4½, together with one thousand St. Bonaface Refunding, one thousand St. James 5½, a certificate of Battleford Saskatchewan, two shares of the City Bank and Trust Company of Reading, Pennsylvania, and a liquidating certificate of the Pennsylvania *780 Trust Company of Reading, Pennsylvania. In thus listing the securities which he desired Mrs. Snyder to have, he made particular reference to certain of them as "Atlantic City 3½-4½", "St. James 5½ which are now paying 2%", "certificate of Battleford Saskatchewan which has no relative value but pays a little dividend each year so should be kept". By this language, he set them apart from all the other personal property which he owned and distinguished them from his other personal property of the same character. The last sentence of the codicil reads: "These you will be transferred to her". This language might have been more expressive but it clearly shows that the Testator wanted Mrs. Snyder to have the securities above referred to. We are convinced that the language of the codicil constitutes a specific legacy to Mrs. Snyder of the securities named therein.
When the Atlantic City 3½-4½ bonds were called in December 1944, the testator surrendered them through the brokerage firm of Spitzer, Rorick & Company.
By this act he not only parted with the possession of said bonds, but as a result thereof, did not own them at the time of his death on November 29, 1946. Having disposed of a part of the subject matter of the bequest to Mrs. Snyder, during his lifetime, namely the Atlantic City 3½-4½ bonds, there was nothing for that portion of the bequest to take effect upon and it was to that extent, revoked. This amounted to an ademption of the bequest of the 3000 Atlantic City 3½-4½ bond to Mrs. Snyder.
The purchase of the Borough of Lodi Bonds, although made by the same brokerage firm through which the 3000 Atlantic City 3½-4½ bonds, were surrendered, did not constitute Mrs. Snyder the owner thereof under the terms of the codicil to the testator's will. This is necessarily so because the 3000 Atlantic City 3½-4½ bonds were adeemed when surrendered by the testator.
Wolcott v. Shaw, 21 Del.Ch. 1, 2 A. 2d 913; Curtis v. Curtis, 23 Del.Ch. 27, 2 A.2d 88; Ireland v. Hammond, 26 Del. Ch. 181, 25 A.2d 454; Gardner v. McNeal, 117 Md. 27, 82 A. 988, 40 L.R.A., N.S., 553, Ann.Cas.1914A, 119; Harvard Unitarian Soc. v. Tufts, 151 Mass. 76, 23 N.E. 1006, 7 L.R.A. 390; Darlington v. Dillon, 63 Ohio App. 197, 25 N.E.2d 859; Blackstone v. Blackstone, 3 Watts, Pa., 335, 27 Am.Dec. 359.
In the case of Wolcott v. Shaw, [21 Del. Ch. 1, 2 A.2d 915] supra, the Court said:
"The application of the rule is in no wise dependent upon what might seem to have been the intention of the testator. The theory of the law is, that the intention to revoke the devise is expressed by the absolute disposition by the testator in his life-time of the subject matter of the devise".
The case of Eddington v. Turner, 27 Del.Ch. 411, 38 A.2d 738, 155 A.L.R. 562, is distinguishable from the case under consideration because of the factual circumstances. In that case Thomas W. Turner, by his will dated October 17, 1938, devised certain land to his sister, Sallie B. Turner, for life. On October 20, 1938, after the execution of his will, he gave an option to Eddington to purchase at any time within sixty days from that date, a tract of land including the land devised in his will to his sister, Sallie B. Turner. Before the expiration of the sixty day period, namely on December 16, 1938, Thomas W. Turner died, not having changed his will in any respect. Eddington filed a bill in Chancery for specific performance and in pursuance thereof a deed was made to him for the land covered by his option, the purchase money being deposited in Court. Upon a petition to draw the money out of Court, it was held that Sallie B. Turner, the devisee, took a life interest in the land devised to her, subject to the obligation to convey it upon the exercise of the option. The land being converted into money, she was entitled to a life interest in the proceeds of the sale of that portion of the land devised to her. There was no conveyance of the land by the testator during his life-time and the option which he gave Eddington to purchase it was not exercised until after his death.
The claimant, Mrs. Snyder, relies upon the case of Ives v. Canby, decided by the United States Circuit Court, for the District *781 of Delaware, and reported in 48 F. 718, 719, as supporting her contention, but an examination of it shows a marked distinction between it and the case now before the Court. In that case the testatrix owns securities known as the "South Ward Loan of Chester, Pennsylvania" of the value of Ten Thousand Dollars ($10,000), represented by bonds of certain designated numbers, amounts and dates. By her will she bequeathed "Two Thousand Dollars of the South Ward Loan of Chester, Pennsylvania" without reference to the number, amount or date of any particular bond. All of said bonds which the testatrix owned of the South Ward Loan of Chester, Pennsylvania, were paid prior to her death. The Court held that the bequest was a demonstrative legacy and payable out of the general assets of her estate. In defining a specific legacy, the Court used language which supports the claimant's Mrs. Snyder's contention, but it also said "It is therefore important to ascertain the intention of the testator, and such intention must always be * * * expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to constitute a specific legacy".
The appellant, Snyder, also appealed from the decision of the Court, as expressed by letter, refusing to allow an attorney's fee for her counsel. The New Castle Trust Company, neither as executor of the will of Mr. Dungan, nor as trustee under it, has appealed from that portion of the decision, but it contends that if counsel fees can be allowed they should be allowed to counsel for all parties on an equitable basis.
There seems to be no doubt that the Orphans' Court did not spring from the common law, but it has existed in this State since colonial times. Its jurisdiction was defined and enlarged by an Act passed after the separation between the Province and the Lower Counties, between 1721 and 1722, which established it as a distinct tribunal without any connection with the County Courts as it had existed prior to that time, although presided over by the same judges. 1 Woolley Del.Prac. 46, Sec. 77; McCaulley's Ex'r v. McCaulley, 7 Houst. 102, 30 A. 735.
It has been consistently held, that the Orphans' Court possessed sufficient equity power to determine matters properly brought before it which require the application of equitable principles. Farrow v. Farrow, 1 Del.Ch. 457; Green v. Saulsbury, 6 Del.Ch. 371, 33 A. 623; First Nat. Bank of Frankford v. Andrews, 26 Del.Ch. 344, 28 A.2d 676.
The Constitution of 1897 in enumerating the various courts in which the judicial power of the State shall be vested, includes the Orphans' Court. Art. 4, § 1. It provides that the Orphans' Court of each county shall consist of the Chancellor and the Resident Associate Judge of the county, and that the Chancellor shall preside when present. § 11.
The jurisdiction and powers conferred upon it are found in the following language: "This court shall have all the jurisdiction and powers vested by the laws of this State in the Orphans' Court".
Chapter 143, of Volume 42, Laws of Delaware, under which this originated, confers upon the Orphans' Court jurisdiction of the distribution of the assets and surplusage of estates of decedents among persons entitled thereto. Prior to the enactment of this statute, the exclusive jurisdiction to enter decrees of distribution of the assets and surplusage of the estates of decedents reposed in the Court of Chancery. In the case of Glanding v. Industrial Trust Company, Del.Sup., 45 A.2d 553, the Supreme Court of this State held that Chapter 143, of Volume 42 aforesaid, vested in the Orphans' Court a concurrent jurisdiction to enter such decrees. Counsel fees have been allowed by the Court of Chancery in the entry of such decrees not as a matter of right in all cases, but rather, in the sound discretion of the Chancellor in accordance with his findings of good faith and proper motive under all the attending circumstances. We think, therefore, that when the Orphans' Court is called upon to enter decrees of distribution, it likewise has authority in its sound discretion, to *782 allow counsel fees in a manner consistent with the practice prevailing in the Court of Chancery.
We make no allowance for attorney fees in the present case, however, because, we think, that it is a matter entirely within the discretion of the Orphans' Court, to be determined by it from all the facts and circumstances before it.
The decision of the Orphans' Court in regard to the bequest to Mrs. Snyder of the 3000 Atlantic City 3½-4½ bonds made by the codicil to the will of the deceased is affirmed.