COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

August 10, 2016

Brian J. Ferry, Esquire
Ferry Joseph, P.A.
824 Market Street Suite 1000
PO Box 1351
Wilmington, DE 19899

Charles S. Knothe, Esquire
Charles S. Knothe, P.A.
14 The Commons
3516 Silverside Road
Wilmington, DE 19810

RE:   IMO Edward J. Burke Estate
      C.A. No. 10768-MA

Dear Counsel:

This dispute is between a stepson and his stepmother, who was the attorney-in-fact of her husband and later the executrix of her deceased husband's estate. The stepson claims that his stepmother breached her fiduciary duties to her husband by adding her name as a joint owner on her husband's bank account in which he had segregated the proceeds from the sale of his real property in Virginia for the benefit of his four children. The stepson also claims that the stepmother breached her fiduciary duties by failing to use her husband's funds for his medical

care and benefit, and instead had transferred those funds into accounts in her sole name or had lent those funds to her own children. The stepson is seeking: (1) to invalidate certain transfers of property and/or retitling of assets; (2) an accounting from his stepmother in her capacity as her late husband's attorney-in-fact; and (3) the imposition of a constructive trust over estate assets. Pending before me is the stepmother's motion for summary judgment on all issues. For the reasons stated below, I recommend that the summary judgment motion be granted.

Factual Background[1]

Edward J. Burke ("Mr. Burke" or "Decedent") died in Wilmington, Delaware on October 10, 2013,[2] and was survived by Defendant Mildred G. Burke, to whom he had been married for 28 years, and his four children from a previous marriage, one of whom is Plaintiff Kevin Burke. Many years prior to his death, on March 17, 1998, Mr. Burke executed a durable power of attorney naming Mildred as his attorney-in-fact.[3] On the same date, Mr. Burke executed his Last Will and Testament ("the 1998 Will"). The pertinent provisions of the 1998 Will are the following:

> Beneficiaries: I hereby give my home and it[s] contents located at 2225 Grundy Road, Woodbridge, Virginia to my Trustee herein named. The

---

[1] For the purpose of this section I am relying upon the uncontested portions of the pleadings except where otherwise noted.

[2] The Wilmington home in which Mr. Burke resided was in his wife's sole name.

[3] I use first names here only to avoid confusion and unnecessary repetition, and mean no disrespect by this practice.

Trustee shall allow my daughter, Julia Ann Bibbee to live in this home for three years after my death. My daughter shall be responsible for the payment of taxes, maintenance and insurance during this time period. After three years have lapsed I direct my Trustee to sell this house and invest the net proceeds and to give the contents of the house to Julia Ann Bibbee. I direct the Trustee to pay the net income to Mildred Burke for her life. Upon the death of Mildred Burke the corpus shall be distributed equally to my four children: Julia Ann Bibbee, Edward J. Burke, Jr., Kevin T. Burke, and Elizabeth S. Frey. In the event any of my children have predeceased me then I give that child's share to his or her issue per stirpes.

I give the rest and remainder of my estate to my wife, Mildred G. Burke.

In the 1998 Will, Mr. Burke named Mildred as the trustee of his testamentary trust and the executrix of his estate.

In July 2012, Mr. Burke sold his real estate at 2225 Grundy Road, Woodbridge, Virginia, ("2225 Grundy Road") for $150,000 and deposited the sale proceeds into a PNC Bank checking account he had recently opened in his sole name. Mr. Burke then transferred the sale proceeds to a new money market account at PNC Bank which was also solely owned by him. Shortly thereafter, Mr. Burke's health began to decline and during the following months he was hospitalized for kidney failure, a urinary tract infection, and underwent quadruple heart bypass surgery in January 2013. Around this time, Mildred used her power of attorney to add her name as a joint owner on her husband's two accounts at PNC Bank, allegedly without her husband's knowledge or consent. In April 2013, Mildred added her name as power of attorney on an account that Mr. Burke owned jointly with his daughter Elizabeth Frey at the Fort Belvoir Federal Credit Union.

Around the same time, Elizabeth's name was removed as a joint owner and, in May 2013, Mildred closed the credit union account and transferred the funds, $14,424.43, into a checking account that she had recently opened with her own daughter, Eileen Hayes, at WSFS Bank.

After her husband passed away, Mildred did not open an estate because Mr. Burke had no solely-owned property at his death. Following repeated requests from Mr. Burke's children, Mildred filed the 1998 Will on November 21, 2014, more than 13 months after her husband's death.

Procedural Background

Kevin filed his complaint on March 10, 2015, alleging that the proceeds from the sale of 2225 Grundy Road had been segregated by Mr. Burke in his solely owned PNC Bank account with the intent to preserve the funds for his four children after his death. According to Kevin, Mildred's use of the power of attorney to become a joint owner on that account without her husband's knowledge and consent defeated Mr. Burke's testamentary planning. Kevin also claimed that he is entitled to an accounting from Mildred because she: (1) improperly used her husband's funds to lend money to her own son; (2) failed to pay for her husband's medical care and needs; and (3) improperly removed Elizabeth Frey as a joint owner of the credit union account. Kevin is seeking damages relating to Mildred's alleged breaches of fiduciary duty, including those alleged breaches involving the

retitling and transfers of funds from Mr. Burke's PNC Bank accounts and credit union account.

In response to her stepson's complaint, Mildred alleged that by selling 2225 Grundy Road, Mr. Burke had changed his testamentary plan. In addition, Mildred contended that she only put her name on her husband's accounts because she was anticipating her husband incurring further medical expenses, and it would be easier for her to access the money needed for Mr. Burke's care if she were a joint owner. Mildred also denied that Kevin is entitled to an accounting because even if she had not put her name on the accounts as joint owner or power of attorney, she would have inherited everything her husband owned as the residuary beneficiary of his estate under the 1998 Will.

After filing her answer to the complaint, Mildred filed a motion to dismiss that I denied as untimely.[4] However, upon Mildred's request, I then treated it as a motion for summary judgment under Court of Chancery Rule 56(b).[5] In her motion, Mildred argues that she is entitled to summary judgment as a matter of law because once Mr. Burke sold 2225 Grundy Road, the specific gift of this property in the 1998 Will lapsed. She also argues that adding her name to her husband's

---

[4] Docket Item ("DI") 25.

[5] DI 23. Ct.Ch. R. 56(b) provides: "A party against whom a claim, counterclaim, cross-claim or declaratory judgment is asserted may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

PNC Bank accounts had no effect on Kevin because even if Mr. Burke had died with the accounts still in his sole name, Mildred would have inherited the funds under the residuary clause of the 1998 Will. As a result, Mildred contends that Kevin has no interest in these funds and has no standing to bring this action. Mildred also argues that Kevin has no interest in his father's credit union account and Elizabeth Frey, who was a joint owner of that account but is not a party to this action, had agreed to the removal of her name from her father's credit union account.

Kevin opposes the motion for summary judgment, arguing that genuine issues of material fact remain in dispute whether Mildred breached her fiduciary duties and whether the Decedent's children are entitled to the proceeds from the sale of 2225 Grundy Road. In support of his breach of fiduciary duty claims, Kevin cites several specific transactions where Mildred, using her power of attorney, added her name to her husband's sole bank accounts, removed her husband's name from their joint bank accounts, deposited funds belonging to her husband into her own accounts, or used her husband's funds to lend money to her own son. Kevin argues that none of these funds were used for his father's care and should be accounted for by Mildred. Kevin also contends that Mr. Burke repeatedly had told his children that the funds from the sale of 2225 Grundy Road were being held for them in the PNC Bank account in accordance with the 1998

Will, and that Mr. Burke repeatedly had denied Mildred's requests to gain access to this account because he wanted the funds to go to his children. According to Kevin, the Court should not decide this case without hearing testimony. Kevin also argues that the rule of ademption may not apply in this case because the 1998 Will did not devise 2225 Grundy Road to Mr. Burke's children; rather, it was the proceeds from the sale of the real estate that were left to his children.

Analysis

In the 1998 Will, Mr. Burke left 2225 Grundy Road to the trustee of a testamentary trust to be held for the use of one of his daughters for three years then sold, and he directed the sale proceeds to be invested by the trustee so that the net income from the trust corpus could be paid to Mildred for her life. Upon Mildred's death, the trust corpus was to be distributed equally to Mr. Burke's four children. However, in 2012, Mr. Burke sold 2225 Grundy Road. When he died in 2013, Mr. Burke no longer owned 2225 Grundy Road; as a result, the specific devise of real property to the testamentary trust failed.

An ademption occurs when a specific gift of real or personal property in a will is no longer available for delivery to a named beneficiary or beneficiaries because the testator lost or conveyed it prior to his death. Here, there is no question that this was a specific devise; Mr. Burke intended the trustee of his testamentary trust to receive a specific property located at 2225 Grundy Road in

Woodbridge, Virginia. However, after Mr. Burke sold 2225 Grundy Road, the real property was no longer his property to devise. Although Mr. Burke received cash upon the sale of this property, Delaware follows the rule that once property has so substantially changed that it cannot be traced directly to another form, an ademption has occurred.[6] While Kevin claims that the sale proceeds from 2225 Grundy Road can be traced to a specific bank account, cash is not considered a substitute for real property under the test of substantial identity.[7] Furthermore, the rule of ademption in Delaware does not depend upon the intention of the testator and may, in some cases, defeat the intention of the testator.[8]

Kevin argues that the rule of ademption may not apply to this case because under the 1998 Will, Mr. Burke's four children ultimately were to receive the net proceeds from the sale of 2225 Grundy Road. Although Kevin provides no legal support for his argument and I could find no Delaware cases on point, research shows that some courts in other jurisdictions do not apply the rule of ademption

---

[6] *See In re Hobson's Estate*, 456 A.2d 800, 802 (Del. Ch. 1982)

[7] *Id.* ("proceeds from the sale are so different that they cannot be regarded as the same or standing in the place of that property."). *See also* Restatement (Third) of Property (Wills & Don. Trans.) § 5.2 (1999) ("It is also clear that if the testator sells the property, and holds the cash proceeds of the sale at death, those cash proceeds do not amount to the specifically devised asset in a changed form, whether tracing is possible or not. The reason is that the change into cash is too substantial a change to be treated as the same asset though in a changed form. Cash is the opposite of something specific, because the holder of cash has nearly infinite options to spend or invest it.")

[8] *Hobson's Estate,* 456 A.2d at 802.

where the specific bequest is of proceeds rather than the thing itself while other courts do not recognize a distinction between a gift of property itself and a gift of proceeds.[9] I am reluctant to wade into "an area of considerable confusion and disharmony both as to result and theory,"[10] especially where the gift in question does not fall neatly into either category. It bears repeating that in the 1998 Will, Mr. Burke left 2225 Grundy Road to a trustee to be held in trust so that his daughter Julia could enjoy a limited (three-year) life estate in the real property, after which 2225 Grundy Road was to be sold and the proceeds invested so Mildred could enjoy the net income from the trust corpus for the remainder of her life before what remained of the sale proceeds was distributed to his four children. Mildred is still alive. Had the property not been sold prior to Mr. Burke's death, Mildred would have been the income beneficiary of the testamentary trust and Decedent's four children would not have been entitled to receive any proceeds until after Mildred's death.

Even if I had been tempted to wade into the above doctrinal dispute, I cannot. The theory underlying the law of ademption in Delaware is clear.[11] Mr.

---

[9] Douglas Hale Gross, "Ademption of bequest of proceeds of property," 45 A.L.R.3d 10 § 2[a] (originally published in 1972).

[10] *Id.*

[11] *See In re Dungan's Estate*, 73 A.2d 776, 780 (Del. Super. 1950) ("The application of the rule is in no wise dependent upon what might seem to have been the intention of the testator. The theory of the law is, that the intention to revoke the devise is expressed by the absolute disposition by the testator in his lifetime of

Burke knew that the 1998 Will contained a specific devise of 2225 Grundy Road when he sold the property to third parties. Therefore, under Delaware law, that sale reflected Mr. Burke's intention to revoke the devise. Had the sale proceeds remained in a bank account in Mr. Burke's sole name, upon Mr. Burke's death, the sale proceeds would have passed to Mildred under the general residuary clause of the 1998 Will.[12] Mildred's use of the power of attorney to add her name as a joint owner of her husband's PNC Bank accounts during his lifetime makes no difference to the outcome here.

Since Kevin is not entitled to any portion of the sale proceeds, he also lacks standing to complain about Mildred's use of the power of attorney to add her name as a joint owner of the PNC Bank account holding the proceeds. In order to have standing, a complainant must have:

> suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as

---

the subject matter of the devise.") (quoting *Wolcott v. Shaw*, 2 A.2d 913, 915 (Del. Ch. 1930)).

[12] *See Hobson's Estate*, 456 A.2d at 802 ("It is well established that the subject matter of lapsed or ineffectual legacies or devises, in the absence of contrary intent, passes under a general residuary clause where the will contains one and does not descend as intestate property to the testator's next of kin.").

opposed to merely speculative, that the injury will be redressed by a favorable decision.[13]

Here, Kevin has suffered no injury as a result of Mildred's adding her name to her husband's PNC Bank accounts. Similarly, since Kevin is neither a creditor nor a beneficiary of his late father's estate, he is not entitled to an accounting from Mildred of her overall handling of Mr. Burke's funds. The only individuals who might have been injured by Mildred's alleged misuse of the power of attorney were Mr. Burke and Elizabeth Frey. Elizabeth is not a party to this complaint, and Kevin cannot represent her interests. Mildred, on the other hand, is a party both in her individual capacity and in her capacity as executrix of her late husband's estate. In those capacities, she has denied any wrongdoing. Therefore, there is no genuine issue of material fact in dispute that would warrant the denial of Mildred's summary judgment motion.

Exceptions

Kevin has taken exception to my draft report, arguing that I: (1) did not apply the highly deferential standard when reviewing a summary judgment motion, but instead identified factual disputes and resolved them in favor of Mildred; (2) should not have ruled on the ademption issue before receiving any evidence or testimony; (3) failed to address Kevin's standing under the Delaware Power of

---

[13] *Vichi v. Koninklijke Philips Electronics N.V.,* 62 A.3d 26, 38 (Del. Ch. 2012) (quoting *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d

Attorney Statute; and (4) failed to apply equitable principles to prevent Mildred's unjust enrichment as a faithless fiduciary.

There was no dispute that Mr. Burke sold 2225 Grundy Road prior to his death. This case hinges on one legal issue: whether the sale of 2225 Grundy Road resulted in an ademption of the specific gift of this property to the testamentary trustee named in Mr. Burke's 1998 Will. I see no reason to alter my previous analysis of this issue. The sale worked an ademption of this gift because the real property was no longer available for delivery to the testamentary trustee. As a result, Mildred became the sole beneficiary of her late husband's estate under the residuary clause of his 1998 Will.

Since Mildred was the sole beneficiary, Mildred's alleged misuse of Mr. Burke's funds would have harmed no one except possibly Mr. Burke during his lifetime or possibly his daughter Elizabeth, who had been a joint owner on one of Mr. Burke's accounts until Mildred removed her name from the account. To the extent that Kevin argues that he has standing as a child of the principal to seek an accounting from Mildred as Mr. Burke's agent under the Delaware Power of Attorney Statute, 12 *Del. C.* § 49-A-116, his request for relief comes too late. The time for Kevin to have sought such judicial relief was while Mr. Burke was still alive as the following pertinent parts of the statute makes clear:

1103, 1110 (Del. 2003)).

(b) Any of the following persons may file a petition seeking appropriate relief under this section:

        (1) The principal or the agent;

        (2) The spouse, child, or parent of the principal;

        (2) [sic] A guardian, trustee, or other fiduciary acting for the principal;

        (3) The personal representative, trustee, or a beneficiary of the principal's estate;

        (4) Any other interested person, as long as the person demonstrates to the Court's satisfaction that the person is interested in the welfare of the principal and has a good faith belief that:

                a. The Court's intervention is necessary; and

                b. The principal is incapacitated at the time of filing the petition or otherwise unable to protect that principal's own interests; or

        (5) A person is asked to accept a personal power of attorney.

(c) Upon motion by the principal, who shall be presumed to have legal capacity, the Court shall dismiss a petition filed under this section, unless the Court finds that the principal lacks capacity to revoke the agent's authority or the personal power of attorney.

(d) Nothing in this section shall preclude or diminish the Court's authority to appoint a guardian or other fiduciary pursuant to Chapter 39 of this title, or to order other judicial relief, in order to grant appropriate relief upon review of a person power of attorney or an agent's conduct with respect to a personal power of attorney.

(e) Nothing in this section shall preclude the Department of Health and Social Services, the Public Guardian, or other governmental agency having authority to protect the welfare of the principal from petitioning the Court for access to the principal or to records necessary to determine, or terminate, possible abuse, neglect, exploitation or abandonment of the principal.

With one exception, the above statute contemplates petitions for judicial relief from interested persons while the principal is alive. The exception is for cases where the personal representative, trustee or beneficiary of the principal's estate might seek appropriate relief, i.e., an accounting, under Section 49A-114(g).[14]

---

[14] Section 49A-114(g) provides in pertinent part: "Except as otherwise provided in the personal power of attorney and by § 49A-108(b) of this title, an agent is not

Only if the Court rejects my conclusion that the sale of 2225 Grundy Road worked an ademption of Mr. Burke's gift to the testamentary trustee would Kevin have standing as a remainder beneficiary of a testamentary trust to request an accounting.

In addition to accusing Mildred of being a faithless fiduciary, Kevin also accuses Mildred of defrauding the Register of Wills of approximately $3,780, the probate fees to which that county office would have been entitled on an estate worth in excess of $216,000. According to Kevin, there were zero probate assets at his father's death because Mildred had retitled her husband's bank accounts under the false pretenses of needing access to funds to pay for her husband's medical care. Kevin also argues that Mildred employed the same false pretenses to convince Elizabeth Frey to remove her name from the credit union account she jointly owned with her father, as a result of which Mildred was unjustly enriched by $15,000, at the expense of Elizabeth.

It bears repeating that Elizabeth is not a party to this complaint and Kevin cannot represent Elizabeth's interests. Similarly, it is unclear why Kevin is taking Mildred to task for avoiding probate fees, assuming Mildred retitled her husband's bank accounts for that purpose. The avoidance of tax consequences has long been

required to disclose receipts, disbursements, or transactions conducted on behalf of the principal unless ordered by a court or requested by …, or, upon the death of the

recognized by this Court as a valid objective of trusts.[15]  I see no reason why the retitling of assets to avoid probate fees in the estate context should be viewed differently.

Conclusion

For the reasons stated above, I am adopting the draft report as my final report as modified herein.  I recommend that the Court grant summary judgment in favor of Mildred on all counts since Kevin is not entitled as a matter of law to invalidate any transfers of property and/or retitling of assets, an accounting, or the imposition of a constructive trust over estate assets.  I refer the parties to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

principal, by the personal representative or successor in interest of the principal's estate."
[15] *See Roos v. Roos*, 203 A.2d 140, 143 (Del. Ch. 1964) (citing *In re DuPont*, 194 A.2d 309 (Del. Ch. 1963)).